# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN EUGENE MANGRUM,<br><br>            Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>            Defendant. | Case No.: 1:20-cv-00932-BAM<br><br>**ORDER REGARDING SOCIAL SECURITY COMPLAINT** |

## **INTRODUCTION**

Plaintiff Brian Eugene Mangrum ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 12-14.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act on July 18, 2016. AR 15, 17, 23, 170-177.[3] Plaintiff alleged in his initial application that he became disabled on June 15, 2015, due to back problems, neck problems, degenerative disc disease, high blood pressure, high cholesterol, and hypertension. AR 18, 170-177, 191. Plaintiff's applications were denied initially and on reconsideration. AR 94-102,104-108. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Mary P. Parnow held a hearing on March 25, 2019. AR 31-49. At the hearing, Plaintiff amended his onset date to September 13, 2016. AR 15, 35. ALJ Parnow issued an order denying benefits on May 14, 2019. AR 15-23. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on March 25, 2019, in Bakersfield California. AR 31. Plaintiff appeared at the hearing with his attorney, Susan Fox. AR 34. Linda Ferra, an impartial vocational expert, also appeared and testified. AR 44-47.

In response to questions from the ALJ and his attorney, Plaintiff testified that he lives with his parents and received food stamps. AR 41-42. He completed the eleventh grade but did not graduate from high school. AR 35. When asked about his daily activities and abilities, Plaintiff testified that he does not currently need help getting dressed in the morning but encounters problems getting in and out of the shower. AR 40. Plaintiff further testified that he does not cook or clean but is able to do his laundry by dragging his laundry basket from his bedroom to the laundry. AR 41. Plaintiff testified that he does not have any problem driving but does not go grocery shopping. *Id.*

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about his past work, Plaintiff testified that he worked as a material handler and truck driver for Goodwill in 2014 and 2015. AR 35. In that position, Plaintiff testified that he moved refrigerators, washers, and dryers. AR 36. Plaintiff also testified that he worked as a driver in a seasonal position with Lerer Brothers. AR 36.

On a typical day, Plaintiff mostly rests in bed and watches television. AR 37. Plaintiff testified that the most comfortable position is for him to lay on his bed on his back. *Id*. Plaintiff estimated that he lays on his back for approximately six or more hours in an eight-hour day. *Id*.

When asked about his abilities, Plaintiff testified that he could stand for approximately 5 to 10 minutes and would need to sit for approximately 15 to 20 minutes after standing for 5 to 10 minutes. AR 38. Plaintiff further estimated that he could lift approximately ten to fifteen pounds without problems. He testified that the side effects from his medications made him dizzy and sleepy and he took one to two hour-long naps per day. AR 39. Plaintiff testified that epidural injections he received for his conditions would dull but not resolve the pain, and the side effects from those would cause several days of nausea. AR 39-40. Plaintiff noted that Cortisone injections he received would help temporarily. AR 40.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE"). AR 44-48. The VE categorized Plaintiff's past work as material handler, semi-skilled at SVP 3 and heavy in exertion, and truck driver, semi-skilled at SVP 3 and medium in exertion. AR 44. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education and work background who is capable of light work, can frequently climb ramps and stairs; only occasionally climb ladders, ropes, or scaffolds; frequently balance, kneel, and crouch; and only occasionally stoop or crawl. AR 46. The VE testified that there would be other work for this person, such as fast-food worker, housekeeping cleaner, and packing line worker. *Id*.

For the second hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work experience as Plaintiff, but "he can only sit, stand, or walk one hour of an eight-hour day, and he would have to have breaks seven to eight times during the day for about 10 to 15 minutes." AR 47. The VE testified that work would be precluded. *Id*.

For the third hypothetical, the ALJ asked the VE to add to the second hypothetical that the person would need to lay down or take an extra break of approximately one hour in addition to lunch and other regular breaks. *Id*. The VE testified that this scenario would preclude work. *Id*.

### Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-23. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2016, the application date. AR 17. The ALJ identified the following severe impairments: cervical spine degenerative disc disease and lumbar spine facet arthritis. *Id*. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 18-23.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the limitations that Plaintiff "can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop; frequently kneel and crouch; and occasionally crawl." AR 18. With this RFC, and based upon the testimony of the VE, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs that exist in significant numbers in the national economy. AR 23. The ALJ therefore concluded that Plaintiff was not disabled. *Id*.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be

4

considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred by discounting the opinions of Plaintiff's treating physicians.  Plaintiff further contends that the ALJ committed harmful error by failing to provide clear and convincing reasons to discount Plaintiff's symptom testimony.

///
///
///
///

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

**A.  Evaluation of Treating Physicians – Drs. Parmar and Patel**

Plaintiff contends that the ALJ erred by discounting the opinions of Plaintiff's treating physicians, Dr. Ashok M. Parmar, M.D. and Dr. Ranesh Patel, M.D.

### 1. Dr. Parmar Evaluation

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

On July 27, 2016, Dr. Parmar filled out a questionnaire assessment indicating that Plaintiff was limited to lifting and carrying ten pounds occasionally, carrying less than ten pounds frequently, sitting one hour during an eight-hour workday, standing or walking one hour total in an eight-hour workday, walking approximately one block without significant pain, and could expect to miss work more than four times per month. AR 328-329. Dr. Parmar also indicated that Plaintiff could only use his arms for reaching approximately 15% of an eight-hour workday, that Plaintiff could only use his fingers for fine manipulation 10% of an eight-hour workday, and that Plaintiff could only use his hands for grasping, turning, or twisting objects for 10-15% of an eight-hour workday. AR 328.

On July 12, 2018, Dr. Parmar filled out another questionnaire assessment indicating that Plaintiff was limited to lifting and carrying ten pounds occasionally, carrying less than ten pounds frequently, sitting one hour, standing or walking one hour total in an eight-hour workday, and could expect to miss work more than four times per month. AR 437-438. Dr. Parmar also wrote that

Plaintiff could only use his arms for reaching approximately 15% of an eight-hour workday, that Plaintiff could only use his fingers for fine manipulation 10% of an eight-hour workday, and that Plaintiff could only use his hands for grasping, turning, or twisting objects for 10-15% of an eight-hour workday. AR 438. Dr. Parmar also indicated that Plaintiff would need seven to eight breaks of ten to fifteen minutes each during the eight-hour workday. AR 437.

In this instance, Dr. Parmar's treating opinion was contradicted by the opinions of state agency medical consultants. In contrast to the opinion of Dr. Parmar, none of the state agency medical consultants identified manipulative limitations. AR 59-60, 61, 75, 87-88. Additionally, all of the state agency medical consultants found Plaintiff had lesser standing and walking limitations than Dr. Parmar, e.g., limiting Plaintiff to standing and walking approximately three to six hours per day. AR 58-59, 60, 74, 87. Further, the state agency medical consultants found that Plaintiff had lesser lifting and/or carrying limitations than Dr. Parmar found, e.g., limiting Plaintiff to frequently lifting ten pounds and occasionally lifting 20 pounds. AR 58-59, 60, 74, 86-87. Because Dr. Parmar's opinion was contradicted, the ALJ was required to provide "specific and legitimate" reasons supported by substantial evidence in discounting that opinion.

In evaluating Dr. Parmar's opinion, the ALJ reasoned as follows:

> In July 2016, Ashok Parmar, M.D., opined the claimant was limited to lifting and carrying occasionally 10 pounds and frequently less than 10 pounds, sitting one hour and standing or walking one hour total in an eight-hour workday, and missing work more than four times a month, among other extreme limitations (Exs. 3F, 9F). This opinion is afforded little weight, however, as the extreme degree of limitations outlined is inconsistent with the above-discussed largely normal objective findings, as well as the claimant's relatively intact daily activities. The undersigned also notes that this opinion predates the amended alleged onset date and does not consider objective medical evidence nor accurately reflect the claimant's condition during the relevant period.

AR 21.

The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Parmar's opinion. First, the ALJ discounted Dr. Parmar's opinion because it was inconsistent with the objective clinical evidence. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole. *See Batson v. Comm'r,* 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). Here, the ALJ examined objective clinical examination

7

data, which included "unremarkable cervical spine with complete range of motion without pain;" "back within normal limits, without significant lesions, kyphosis, anatomic deformity, or abnormality to palpation;" "normal extremities, including normal ranges of motion;" and "normal reflexes, motor function, sensory examination, and coordination…" AR 19, 389, 392-93, 396, 399, 402-03, 422, 425, 500, 514, 514, 518, 522, 526, 529-30, 570-71, 573-574, 621, 668-69, 672-73, 737, 741, 799-804.  In addition, the ALJ found that X-rays of Plaintiff's left hip revealed normal results.  AR 19, 449.  The ALJ further noted that Plaintiff denied discomfort while standing and "denied discomfort, aching, or fatigue in his legs while walking; reported he did not stop and rest while walking; and denied discomfort or difficulty while walking inclined, going up stairs, or walking at an increased speed." AR 20, 389, 391-392, 396, 399, 402, 425, 512-513, 517, 521, 525, 533, 607, 694. The ALJ's examination of the record thus supported her discounting of Dr. Parmar's opinion.

Second, the ALJ determined that the "extreme degree of limitations outlined" by Dr. Parmar was unjustified given the "claimant's relatively intact daily activities."  AR 19.  An ALJ may discredit treating physicians' opinions as unsupported by the record as a whole when there are discrepancies between the treating physician's opinion and the claimant's daily activities.  *See Batson*, 359 F.3d at 1195 (citation omitted); *Morgan v. Comm'r*, 169 F.3d 595, 600-02 (9th Cir. 1999) (finding that the inconsistency between medical opinion and reported daily activities was a specific and legitimate reason for the ALJ to reject a treating physician's opinion).  Here, the ALJ cited Plaintiff's ability to dust and cook without assistance, drive occasionally, do errands such as going to the Post Office or grocery store without assistance, shop, walk one block outside his home, stand ten to fifteen minutes at a time, sit ten to fifteen minutes at a time, lift ten to fifteen pounds, and reach without problems.  AR 20, 38, 210-212.  The ALJ further cited Plaintiff's testimony that he was able to drive, see his son off to school, wash dishes and laundry, and lived with family.  AR 20, 41-42.  The Court therefore finds the ALJ appropriately discounted Dr. Parmar's opinion given Plaintiff's relatively intact daily activities.

The ALJ also noted that Dr. Parmar's "opinion predates the amended alleged onset date and does not consider objective medical evidence nor accurately reflect the claimant's condition during the relevant period." AR 21.  Dr. Parmar's July 27, 2016 opinion is dated prior to the amended onset date

of September 13, 2016.  AR 15, 35, 328-329.  However, Dr. Parmar's July 12, 2018 opinion is dated after the amended onset date.  AR 437-438.  The ALJ's failure to note the July 12, 2018 opinion as being made after the alleged onset date thus appears to be error.  Nevertheless, the Ninth Circuit has found the harmless error standard applies in instances of ALJ's discounting of physician opinions.  *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the "harmless error analysis applies ... to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical opinion"); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ committed harmless error in misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–19 (9th Cir. 2016) (holding the ALJ committed harmless error where she did not consider a reviewing physician's opinion because she believed the physician was "referring to 'another individual of the same name.'")  The Ninth Circuit has also "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Even if the ALJ erred in her belief that Dr. Parmar's opinion predated Plaintiff's amended onset date, Dr. Parmar's July 27, 2016 opinion and July 12, 2018 opinion were substantively the same.  AR 328-329; 437-438.  In addition, the ALJ did not solely discredit Dr. Parmar's opinion based upon this date issue.  She evaluated the substance of Dr. Parmar's opined limitations and discounted them as unsupported by the record as a whole and as inconsistent with Plaintiff's reported daily activities.  AR 21.  Accordingly, the ALJ's error in assuming that Dr. Parmar's opinion predated the amended onset date is harmless and does not necessitate remand.

Plaintiff argues the ALJ did not sufficiently articulate "why the probative opinions of Plaintiff's treating physicians were discounted."  (Doc. 21 at 12.)  Plaintiff cites the Ninth Circuit in *Brown-Hunter* as requiring the ALJ to "set forth the reasoning behind its decisions in a way that allows for meaningful review."  806 F.3d 487, 492 (9th Cir. 2015).  In *Brown-Hunter*, however, the court was reviewing an ALJ discounting claimant testimony.  In that case, the ALJ "concluded that although Brown-Hunter's 'medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,' her 'statements concerning the intensity, persistence and limiting

9

effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.'" *Id.* at 491. In contrast with the cursory discounting of claimant's testimony in *Brown-Hunter*, the ALJ here offered multiple reasons for discounting the opinions of Dr. Parmar and Dr. Patel. As discussed, the ALJ noted that the "extreme degree of limitations outlined [by Dr. Parmar] is inconsistent with the above-discussed largely normal objective findings, as well as the claimant's relatively intact daily activities." AR 21. This followed a detailed discussion of the clinical examinations and Plaintiff's statements which supported the ALJ's conclusion. AR 19-20. The ALJ offered multiple clear reasons for discounting Dr. Parmar's opinion, and thus allowed for meaningful review. The ALJ also sufficiently articulated her reasons for discounting Dr. Patel's opinion to allow for meaningful review, as later discussed.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Parmar's opinion.

### 2. Dr. Patel Evaluation

On October 10, 2017, Dr. Ranesh Patel, M.D. filled out a questionnaire assessment indicating that Plaintiff was limited to standing or walking zero to two hours total and sitting zero to two hours total in an eight-hour workday; never climbing, balancing, stooping, kneeling, crouching, crawling, or reaching; and occasionally reaching below the knees, from waist to knees, and from waist to chest. AR 21; 432-434. Dr. Patel further opined that Plaintiff was unable to work. AR 432. In the section assessing Plaintiff's abilities to lift and/or carry ten pounds, Dr. Patel additionally checked boxes for "Never," "Occasionally," "Frequently," and "Constantly." AR 434.

In this instance, Dr. Patel's treating opinion was contradicted by the opinions of state agency medical consultants. In contrast to the opinion of Dr. Patel, all of the state agency medical consultants found Plaintiff had lesser standing and walking limitations than Dr. Patel. AR 58-59, 60, 74, 87. Additionally, contrasting with Dr. Patel's opinion that Plaintiff could never climb, balance, stoop, kneel, crouch, crawl, or reach, the state agency medical consultants all found that Plaintiff could complete these tasks at least occasionally. AR 59-60, 61, 75, 87.

Because Dr. Patel's opinion was contradicted, the ALJ was required to provide "specific and legitimate" reasons supported by substantial evidence in discounting that opinion. In evaluating Dr. Patel's opinion, the ALJ reasoned as follows:

> In October 2017, Ranesh Patel, M.D.,… opined the claimant was limited to standing or walking zero to two hours total and sitting zero to two hours total in an eight-hour workday; constantly lifting or carrying 10 pounds; never climbing, balancing, stooping, kneeling, crouching, crawling, and reaching; and occasionally reaching below the knees, from waist to knees, and from waist to chest (Ex. 8F). Again, these extreme limitations are inconsistent with the above-discussed largely normal objective findings and treating records generally reflecting effective conservative treatment, as well as the claimant's relatively intact daily activities, and the reaching limitations appear to be internally inconsistent. They are afforded little weight overall.

AR 21. The ALJ further noted that, "In accordance with 20 CFR 404.1527(d) and 20 CFR 416.927(d), medical-source statements regarding issues reserved to the Commissioner, such as that the claimant is disabled or regarding application of vocational factors, are given no special significance. (e.g., Ex. 8F [Dr. Patel's October 2017 opinion])." AR 21.

The Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Patel's opinion. First, the ALJ properly discounted Dr. Patel's opinion that Plaintiff was unable to work, because that statement was an opinion on an issue reserved to the Commissioner. *See* AR 21, 432. A physician's opinion on the ultimate issue of disability is not entitled to controlling weight because statements "by a medical source that [a claimant is] 'disabled' or 'unable to work'" "are not medical opinions" under the Social Security regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d). An ALJ "is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability. SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion").

Second, the ALJ properly discounted Dr. Patel's opinion as unsupported by the record. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole. *See*

11

*Batson,* 359 F.3d at 1195. Here, Dr. Patel's questionnaire indicated that Plaintiff was limited to standing, walking, or sitting zero to two hours in an eight-hour workday and that Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. AR 21; 432-434. In contrast, the ALJ examined objective clinical examination data, including many findings that were within normal limits and Plaintiff's denials of discomfort, aching, or fatigue. AR 19-20. According to the record, results from Plaintiff's examinations were generally unremarkable or within normal limits. AR 389, 391-393, 396, 399, 422, 425, 499, 500, 512-514, 517-518, 522, 525-526, 573-574, 621, 668-669, 672-673, 737, 741, 799-804. In addition, the record revealed instances where Plaintiff either denied pain and fatigue or reported that the pain was not debilitating. AR 391-393, 396, 399, 402-03, 422, 425, 512-514, 517-518, 525-526, 529-530, 533, 570-571, 573-574, 607, 668-669, 672-673, 694. Given the contrast between Dr. Patel's opinion and the record as a whole, the ALJ did not err in assigning little weight to Dr. Patel's opinion.

Third, the ALJ properly considered Plaintiff's effective conservative treatment in discounting Dr. Patel's opinion. AR 21. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983)). Here, in examining treatment records from Dr. Parmar, the ALJ found from the record that Plaintiff "reported sacroiliac joint injections 'helped significantly,' [provided] 'good relief' with various epidural steroid and facet injections, and treating records noted 'moderate' or 'adequate relief from current medications' such that his pain was not debilitating, and he was 'able to carry out activities of daily living,' including ambulating with ease, consistent with effective treatment (Exs. 7F: 10; 15F: 3, 12, 30; 18F: 11)." AR 20, 425 (normal examination findings and noting that Plaintiff experienced adequate relief from medications "and is able to carry out activity of daily living"), 667 (normal examination findings noting "muscle pain or tenderness in low back radiating to bilateral lower extremity"), 676 ("patient reports moderate relief from current medications and is moderately able to carry out activity of daily living. Pain does not go away completely but it eases up to the point its not debilitating. Denies any other concerns at this time;" "Medications help to maintain pain levels."), 694

("In todays [sic] visit patient reports moderate relief from current medications and is moderately able to carry out activity of daily living. Pain does not go away completely but it eases up to the point its [sic] not debilitating. Denies any other concerns at this time."), 791 (noting "moderate relief" from medication and that the pain "does not go away completely but it eases up to the point its [sic] not debilitating.")  The ALJ further noted:

> the claimant denied any scheduled surgery to relieve pain or use of any device to assist in relieving pain or its effects, and he frequently attended doctor's appointments for routine checkup or transient illness and generally reported no complaints, including no joint, neck, back, extremity, or shoulder pain; numbness or tingling; or weakness. He denied discomfort, aching, or fatigue in his legs while walking; reported he did not stop and rest while walking; and denied discomfort or difficulty while walking inclined, going up stairs, or walking at an increased speed. He denied discomfort while standing still or sitting. This suggests that his symptoms were generally adequately controlled with conservative treatment and seems inconsistent with symptoms of the disabling severity alleged (e.g., Exs. 4E: 3; 6F: 10, 12-13, 17, 20, 23; 7F: 10; 13F: 3-4, 8, 12, 16, 24; 14F: 3; 15F: 30).

AR 20, 211 (Plaintiff's reported daily activities included walking, doing household chores, driving (sometimes), and shopping (when necessary)), 389 (normal examination findings, no musculoskeletal pain), 391-392 (noting that Plaintiff denied pain while walking, standing, or sitting), 396 (normal examination findings, no musculoskeletal pain), 399 (normal examination findings, no musculoskeletal pain), 402 (normal examination findings, no musculoskeletal pain), 425 (normal examination findings and noting that Plaintiff experienced adequate relief from medications "and is able to carry out activity of daily living"), 512-513 (noting no complaint from Plaintiff, no musculoskeletal pain, and normal musculoskeletal findings), 517 (normal musculoskeletal findings and no musculoskeletal pain), 521 (normal musculoskeletal findings and no musculoskeletal pain), 525 (normal musculoskeletal findings and no musculoskeletal pain), 533 (normal musculoskeletal findings and no musculoskeletal pain), 607 (noting no musculoskeletal pain), 694 ("In todays [sic] visit patient reports moderate relief from current medications and is moderately able to carry out activity of daily living. Pain does not go away completely but it eases up to the point its [sic] not debilitating. Denies any other concerns at this time.").  Therefore, the ALJ properly considered the record of effective conservative treatment in discounting Dr. Patel's opinion.

Fourth, the ALJ noted that Dr. Patel's opinion was inconsistent with "claimant's relatively intact daily activities." AR 21. As stated, an ALJ may discredit treating physicians' opinions as unsupported by the record as a whole when there are discrepancies between the treating physician's opinion and the claimant's daily activities. *See Batson v*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 600-02. As discussed above, the ALJ cited numerous daily activities that Plaintiff was able to accomplish, including cooking, cleaning, and running errands. AR 20, 38, 41-42, 210-212. The ALJ thus appropriately discounted Dr. Patel's opinion given Plaintiff's relatively intact daily activities.

Fifth, the ALJ properly discounted Dr. Patel's opinion based on internal inconsistencies. An ALJ may discount opinions that are internally inconsistent. *Houghton v. Comm'r*, 493 F. App'x 843, 845 (9th Cir. 2012) (finding that the ALJ had a legitimate basis to discount physicians' internally inconsistent opinions in favor of other opinions "better supported by the evidence and more consistent with the record as a whole.") Here, the ALJ noted that Dr. Patel's "reaching limitations appear to be internally inconsistent." AR 21. Indeed, Dr. Patel checked boxes that Plaintiff could "never" reach and also checked boxes that Plaintiff could "occasionally" reach below the knees, reach from waist to knees, and reach from waist to chest. AR 434. Further, in the section assessing Plaintiff's abilities to lift and/or carry ten pounds, Dr. Patel checked boxes for "Never," "Occasionally," "Frequently," and "Constantly." AR 434. Given these internally inconsistent items within Dr. Patel's opinion, the ALJ permissibly discounted Dr. Patel's opinion.

As discussed above in connection with Dr. Parmar's opinion, Plaintiff argues that the ALJ did not sufficiently articulate "why the probative opinions of Plaintiff's treating physicians were discounted." (Doc. 21 at 12.) Plaintiff cites the Ninth Circuit in *Brown-Hunter* as requiring the ALJ to "set forth the reasoning behind its decisions in a way that allows for meaningful review." 806 F.3d 487, 492 (9th Cir. 2015). Unlike the brief statement in *Brown-Hunter*, however, here the ALJ explained that she discounted Dr. Patel's opinion given that the "extreme limitations are inconsistent with the above-discussed largely normal objective findings," the "treating records generally reflect[] effective conservative treatment," and "the claimant's relatively intact daily activities," and internally inconsistent reaching limitations. AR 21. This summary came after the ALJ discussed the clinical examinations, Plaintiff's statements regarding his daily activities, and Plaintiff's history of treatment.

14

AR 19-20. Having found that the ALJ articulated specific and legitimate reasons supported by substantial evidence for discounting Dr. Patel's opinion, the Court finds that the ALJ allowed for meaningful review.

Finally, Plaintiff contends that the findings of the non-examining state agency consultants do not constitute substantial evidence. (Doc. 21 at 15.) This argument fails because the ALJ considered substantial evidence beyond the state agency medical consultants' reports in discounting Dr. Parmar's and Dr. Patel's opinions. *See Basoff v. Saul*, 812 F. App'x 483, 484 (9th Cir. 2020) (holding that the ALJ's discounting of a physician's opinion was supported by substantial evidence where the ALJ considered the length of the physician-claimant treatment relationship, lack of specific functional limitations in the physician's opinion, and the record showing mild medical findings). Additionally, the authority Plaintiff cites in support is inapposite because the ALJ in those cases considered either no or minimal evidence beyond the state agency medical consultants' reports. In *Pitzer v. Sullivan*, the Ninth Circuit found that "there is nothing in the record before us that supports the non-examining physicians' and the Secretary's conclusion that Pitzer, who has not worked in fifteen years, and who cannot return to her former work as a dishwasher or waitress…has the functional capacity to perform light or sedentary work." 908 F.2d 502, 506 n. 4 (9th Cir. 1990). The Ninth Circuit there concluded that the "nonexamining physicians' conclusion, *with nothing more*, does not constitute substantial evidence…" *Id.* (emphasis added). In *Gallant v. Heckler*, the Ninth Circuit stated that a "report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record." 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir.1984)). However, in *Gallant*, the "only reports which directly support a finding of Gallant's ability to engage in light and sedentary levels of exertion were made by two staff physicians who never examined claimant, but who based their conclusions on a review of submitted medical evidence." *Id.* Unlike those cases where the record showed minimal to no contradictory evidence, the ALJ here cited the clinical examinations, treatment records, and Plaintiff's own statements about his daily activities in addition to the opinions of state agency medical consultants. AR 19-20.

The Court therefore concludes that the ALJ did not commit reversible error in discounting the opinions of Dr. Parmar and Dr. Patel.

### B. Plaintiff's Subjective Complaints

Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence. (Doc. 21 at 23.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson,* 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. AR 19. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The ALJ first found that Plaintiff's subjective symptoms and difficulties were inconsistent with his relatively intact daily activities. AR 20. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*. The ALJ cited Plaintiff's ability to engage in light housekeeping chores, such as dusting and cooking without assistance, along with Plaintiff's ability to occasionally drive, do errands such as going to the Post Office or grocery store without assistance, shop, walk one block outside his home, stand ten to fifteen minutes at a time, sit ten to fifteen minutes at a time, lift ten to fifteen pounds, and reach without problems. AR 20, 210-212. The ALJ further cited Plaintiff's testimony that he was able to drive, see his son off to school, wash dishes

and laundry, and lived with family. AR 20, 41-43, 211 (Plaintiff's reported daily activities included walking, doing household chores, driving (sometimes), and shopping (when necessary)). Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113. The Court therefore finds the ALJ appropriately discounted Plaintiff's subjective complaints given Plaintiff's demonstrated daily activities.

In addition, the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were not supported by the medical findings. AR 19-20. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). With respect to Plaintiff's allegations of disabling physical limitations from cervical spine degenerative disc disease and lumbar spine facet arthritis, the ALJ considered that objective findings on clinical examination were within normal limits. AR 19-20. The medical evidence showed:

> unremarkable cervical spine with complete range of motion without pain; appearance of the back within normal limits, without significant lesions, kyphosis, scoliosis, anatomic deformity, or abnormality to palpation; normal bone and mobility in the back; hips non-tender and normal in appearance and mobility; normal extremities, including normal ranges of motion; normal reflexes, motor function, sensory examination, and coordination; normal Romberg testing; and normal gait with intact heel and toe walking.

AR 19. According to the record, results from Plaintiff's examinations were generally unremarkable or within normal limits. AR 389, 391-393, 396, 399, 422, 425, 499, 500, 512-514, 517-518, 522, 525-526, 573-574, 621, 668-669, 672-673, 737, 741, 799-804. In addition, the record revealed instances where Plaintiff either denied pain and fatigue or reported that the pain was not debilitating. AR 391-393, 396, 399, 402-03, 422, 425, 512-514, 517-518, 525-526, 529-530, 533, 570-571, 573-574, 607, 668-669, 672-673, 694.

In discounting Plaintiff's symptoms testimony, the ALJ also considered that Plaintiff's "symptoms were generally adequately controlled with conservative treatment." AR 20. As discussed above, "impairments that can be controlled effectively with medication are not disabling for the

17

purpose of determining eligibility for SSI benefits." *Warre*, 439 F.3d at 1006.  Here, as the ALJ found, the record showed that Plaintiff's symptoms "were generally adequately controlled with conservative treatment" and seemed "inconsistent with symptoms of the disabling severity alleged." AR 20.  The record showed that the results from Plaintiff's examinations were generally unremarkable or within normal limits.  AR 389, 391-393, 396, 399, 422, 425, 499, 500, 512-514, 517-518, 522, 525-526, 573-574, 621, 668-669, 672-673, 737, 741, 799-804.  In addition, the record revealed instances where Plaintiff either denied pain and fatigue or reported that the pain was being adequately treated.  AR 391-393, 396, 399, 402-03, 422, 425, 512-514, 517-518, 525-526, 529-530, 533, 570-571, 573-574, 607, 668-669, 672-673, 694.  Given that the ALJ appropriately assessed the record to determine whether Plaintiff's impairment could be effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony.

In addition, the ALJ considered that Plaintiff stopped working due to a business-related downsizing rather than because of his allegedly disabling impairments.  The ALJ noted that Plaintiff "admitted he stopped working because he was laid off, rather than due to functional limitations arising from allegedly disabling impairments, suggesting that he could have otherwise continued working."  AR 20.  An ALJ may discount a claimant's subjective testimony where the alleged impairment is not the reason that the claimant stopped working.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding testimony that claimant's diabetes was not the reason he stopped working undermined his claims that his diabetes was among his disabling conditions); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding ALJ properly discounted allegations of pain where plaintiff reported at the hearing and to at least one doctor that he left the job because he was laid off, not because he was injured.); *Rios v. Barnhart*, 215 F. App'x 681, 684 (9th Cir. 2006) ("In the evaluation of [claimant]'s subjective complaints, consideration of her work record was appropriate."); *see also Clausen v. Comm'r*, No. 1:17-CV-01484-SAB, 2019 WL 498989, at *17 (E.D. Cal. Feb. 8, 2019) ("An ALJ may consider why a claimant left her last place of employment when making a credibility determination."); *Marti Jean K. v. Comm'r*, No. 6:18-CV-00109-HZ, 2019 WL 3061561, at *6 (D. Or. July 10, 2019) (ALJ properly found that evidence in the record "that the claimant stopped working for reasons not related to her allegedly disabling impairments," which "strongly suggests that the claimant

stopped working because her boss retired, not because her symptoms were limiting."); *Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *8 (E.D. Cal. Aug. 29, 2019) (ALJ properly considered that "Plaintiff stopped working due to a business-related downsizing rather than because of allegedly disabling impairments.") As in *Bruton* and *Findley*, the record demonstrates that the reason Plaintiff stopped working was a layoff on August 30, 2015 rather than his allegedly disabling impairments. AR 191-192. The ALJ permissibly considered the reason Plaintiff stopped working as part of her assessment of Plaintiff's subjective complaints.

Finally, Plaintiff argues the ALJ did not sufficiently explain which testimony or statements were not credible. "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter*, 806 F.3d at 488. Plaintiff further cites the Ninth Circuit in *Brown-Hunter* as holding that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." In *Brown-Hunter*, the ALJ "concluded that although Brown-Hunter's 'medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,' her 'statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.'" *Id.* at 491; *see also Macdonald v. Comm'r of Soc. Sec.*, No. 2:18-CV-2802-DMC, 2020 WL 2936607, at *10 (E.D. Cal. June 3, 2020) (distinguishing *Brown-Hunter* and noting that "While the ALJ's discussion in this case may not be as specific as plaintiff may wish, the Court finds it is sufficient to allow for a meaningful determination that plaintiff's testimony was not rejected arbitrarily.") In contrast with *Brown-Hunter*, the ALJ here did not automatically reject statements inconsistent with the ALJ's RFC assessment. Instead, the ALJ begins by stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" before discussing the medical record and identifying statements by Plaintiff which supported the ALJ's conclusions regarding Plaintiff's symptom statements. AR 19-20. As in

19

1  *Macdonald*, the ALJ here did not simply "reject plaintiff's testimony based solely on inconsistency
2  with the objective medication evidence." *Macdonald*, No. 2:18-CV-2802-DMC, 2020 WL 2936607,
3  at *11. Beyond the medical record, the ALJ pointed to Plaintiff's reported daily activities, effective
4  treatment, and the reason why Plaintiff's last major job ended. AR 19-20. Accordingly, the ALJ
5  sufficiently articulated and explained why she discounted Plaintiff's symptom testimony. The Court
6  therefore concludes that the ALJ did not commit reversible error in evaluating Plaintiff's subjective
7  complaints.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Brian Eugene Mangrum.

IT IS SO ORDERED.

Dated:   **February 17, 2023**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE